CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
For Lynchburg
JUL 0 5 2006
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal No. 6:05CR00039 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CARL B. HUTCHERSON, JR., | ) | |
| | ) | By: James C. Turk |
| Defendant. | ) | Senior United States District Judge |

**I.     Statement of the Facts**

On May 2, 2005, a federal jury in the Western District of Virginia found the defendant, Carl B. Hutcherson, Jr., guilty of all charges in a seven-count indictment against him. During trial, the prosecution presented evidence that proved that the defendant, as representative payee for Kathleen Price's and Fred Jones's social security disability benefits, was charged with a fiduciary duty to properly use the beneficiaries' funds. The evidence demonstrated that on multiple occasions, the defendant breached his duty by using the aforementioned beneficiaries' funds for purposes other than for their benefit.

The prosecution also offered evidence that the defendant created a non-profit organization, Trinity New Life Community Development Corporation ("Trinity"), and used money donated to Trinity for his personal use without receiving proper authorization. During an audit by the Bank of the James of certain unusual transactions on checking accounts of which the defendant was a signatory, he made false statements to bank officials which directed the bank's subsequent actions. He also caused false documents to be created to validate his fraudulent use of Trinity monies. Subsequently, the defendant made false statements to an FBI agent

1

investigating him and proceeded to lead the agent on a hopeless search for certain documents. The evidence also demonstrated that the defendant caused a fraudulent grant application to be approved by a non-profit organization on behalf of Trinity, by making false statements to the grantor and directing a third-party to make false representations in the grant application.

The defendant moves to overturn the jury's finding of guilt on all counts for lack of evidence supporting the counts and as a matter of law on Count VII. In the alternative, he moves for a new trial because of alleged procedural errors.

**II.     Opinion of the Court**

    **A.     Motion for Judgment of Acquittal**

        **i.**

The defendant argues that his conviction on Count VII must be overturned because lying to an FBI agent, who is not yet subpoenaed to testify before a grand jury, is not obstruction of justice as held in United States v. Aguilar, 515 U.S. 593, 600, 115 S. Ct. 2357, 132 L. Ed. 2d 520 (1995).[1] This argument is not a motion for acquittal based on insufficiency of the evidence, but is one premised upon legal error. Thus, the court will review the issue *de novo*.

The defendant has asserted this argument based on Aguilar at every step of this case. At each juncture, the court has rejected the argument because it lacks merit. The fundamental fault with the defendant's argument is his misguided reliance on precedent interpreting Section 1503. The court would agree with the defendant that under Aguilar, a person cannot be convicted of obstruction of justice under Section 1503 for lying to an FBI agent that is not under the auspices

---

[1] The court agrees with the defendant that he cannot be found guilty for turning over the documents at issue to the grand jury because he was ordered by the court.

2

of a grand jury. The defendant, however, was prosecuted under 18 U.S.C. § 1512(c)(2), which is a separate and distinct statute from Section 1503. Cf. United States v. Veal, 153 F.3d 1233, 1250 (11th Cir. 1998) (declining to apply Aguilar to the nexus element of Section 1512(b)(3) because other obstruction statutes such as Section 1512, "implicate different federal interests, which specifically do not identify as the federal interest a federal judicial proceeding, pending or contemplated.").

Contrary to the defendant's assertion, Sections 1503 and 1512(c)(2) are not the same and exact statute in scope and interpretation. The two statutes may overlap because they both prohibit certain types of conduct, but that does not indicate that they are exactly similar in all the types of conduct they permit or prohibit. Using geometry for a metaphor, the fact that two circles may partially overlap does not invariably suggest that they are concentric.

The defendant's assertion that Sections 1503 and 1512(c)(2) are one and the same, flies in the face of fundamental principles of statutory interpretation. When Congress enacts a new statute, it is presumed that Congress intended for the statute to have some purpose that was not yet addressed by existing law. See, e.g., Dorsey Trailers, Inc. v. N.L.R.B., 233 F.3d 831, 843 (4th Cir. 2000) (stating the cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant) (citations omitted). Courts rarely, if ever, find that provisions within a statute are redundant, let alone that an entire validly enacted statute by Congress is superfluous due to an existing statute. The current version of Section 1512(c)(2) was created in 2002, subsequent to the enactment of Section 1503, and the plain language of the statute clearly denotes that it has a purpose different from Section 1503.

The language of Section 1503 states that the type of obstructive conduct that it attempts to

3

prohibit is such conduct aimed at persons involved with judicial proceedings, such as a grand jury. See 18 U.S.C. § 1503 (prohibiting the influencing, intimidating, or impeding of a "grand or petit juror, officer in or of any court . . . ."). The language of Section 1512(c), however, denotes that obstruction of justice entails conduct that is geared not only towards a judicial proceeding but of the more expansive term, "official proceeding." See 18 U.S.C. § 1512(c)(2). Section 1512 cuts a wider swathe than Section 1503 because it also prohibits obstructive conduct aimed at a government agency administering justice, rather than conduct aimed solely at judicial proceedings.

Evidence of the expansive nature of the term is the precedential authority that defined "official proceeding" in Section 1512 prior to the 2002 amendments. "Official proceeding" was broadly defined as including investigatory proceedings by government agencies to effectuate "Congress' purpose in passing it." See United States v. Gonzalez, 922 F.2d 1044, 1055-56 (2d Cir. 1991) (holding that DEA investigation constitutes an official proceeding); see also United States v. Kelley, 36 F.3d 1118, 1128 (D.C. Cir. 1994) (defining the USAID Inspector General's investigation as an official proceeding). Although the text of Section 1512 changed due to the 2002 amendments, there is no indication that Congress intended to alter or change the judicial interpretation of "official proceeding." Cf. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 185, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) ("When Congress reenacts statutory language that has been given a consistent judicial construction, we often adhere to that construction in interpreting the reenacted statutory language.").

Government agency actions, such as the FBI investigation of the defendant, are "official proceedings" under Section 1512, whether or not a grand jury has been convened because

4

Congress intended to deter obstruction of more than judicial proceedings with Section 1512. Specifically, Section 1512(c)(2) is the omnibus clause that intends to punish the myriad of obstructive conduct that cannot be adequately defined in the statute. The defendant's conduct of lying to an FBI agent and subsequently guiding him on an expedition for nonexistent documents, is the type of conduct which Section 1512(c)(2) prohibits because the defendant intended to influence the FBI agent's actions and to obstruct and impede a criminal investigation by exhausting government resources on a meritless search. Therefore, the defendant can be convicted under Section 1512 because he corruptly intended to influence, obstruct and impede an official proceeding.

**ii.**

The defendant's remaining arguments moving for judgment of acquittal are premised upon the assertion that the government produced insufficient evidence to convict on all counts. When a motion for judgment of acquittal is premised on insufficiency of the evidence, the relevant question is not whether the court is convinced of guilt beyond a reasonable doubt, but rather whether the evidence when viewed in the light most favorable to the government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. See United States v. Dominguez, 604 F.2d 304, 310 (4th Cir. 1979). A review of the evidence shows that a rational trier of fact could have reasonably found the defendant guilty on all counts.

For the social security fraud counts, evidence was presented that the defendant used the beneficiaries' funds for his own personal use, such as to pay for his stereo and cable bill. Such use of beneficiary funds for a purpose other than the utility of the beneficiary is the essence of

5

social security fraud. As for the Trinity mail fraud count, the defendant's argument is perplexing and has no basis. The fraud that the defendant committed was the illegal scheme to appropriate Trinity's monies for his own personal use without Trinity's authorization. The mail fraud was complete when he used a commercial carrier to send the fraudulently obtained funds to a third-party.

Even assuming that the defendant made no affirmative material false statements in this fraudulent scheme to abscond with Trinity's funds, it was not what he said but what he did not say that was the premise for fraud. It is hornbook law that material omissions can form the basis for fraud as much as material representations. See, e.g., United States v. Keplinger, 776 F.2d 678, 697 (7th Cir. 1985) ("It requires no extended discussion of authority to demonstrate that omissions or concealment of material information can constitute fraud cognizable under the mail fraud statute . . . ."). The conduct that formed the basis for fraud committed against Trinity was the defendant's surreptitious acquisition of Trinity funds and his omission to properly secure the funds through the approval of Trinity's board of directors. The defendant's knowledge of his misappropriation of Trinity funds and his silence to the Trinity board - if there ever was one - of this fact, is a material omission sufficient to establish fraud.

In addition, the Centra Health mail fraud count was complete when the defendant fraudulently submitted his grant application to Centra Health and the victim relied upon the defendant's representations and notified him of Centra Health's decision by mail. Contrary to the defendant's assertion that the evidence was grossly skewed towards a finding that Davida Wingfield was solely culpable, evidence was presented in which a rational juror could find that the defendant directed Ms. Wingfield and that he personally committed fraud when he spoke

6

with Centra Health's grant administrator in person.

As for the bank fraud count, the defendant falsely represented to a bank official of the validity of the transaction in which he fraudulently obtained funds from Trinity. In addition, evidence was presented that the defendant caused a fraudulent document attesting to the validity of the transaction to be sent to a bank official. The fraudulent conduct of the defendant need not be the sole factor relied upon by a bank official to be considered material, as long as it was an important factor relied upon by the bank official. The bank materially relied upon the defendant's fraudulent conduct and, thus, sufficient evidence existed to convict on this count.

As to the count for making false statements to an FBI agent, more than sufficient evidence exists that he lied to the agent while under investigation. Furthermore, as previously mentioned, the defendant can be convicted of obstruction of justice under Section 1512(c)(2) for lying to an FBI agent and leading the agent on a meritless search for documents; sufficient evidence existed to such conduct.

### B. Motion for New Trial

Fed. R. Crim. P. 33(a) allows a court to vacate any judgment and grant a new trial "if the interest of justice so requires." The defendant argues that a new trial should be granted because he was prejudiced by: (1) The defendant's late disclosure of Brady material; (2) The court's denial of his request to continue trial to further investigate the possibility of more Brady material; (3) The court's failure to strike a juror for cause during *voir dire*; (4) The admission of prejudicial 404(b) evidence; and (5) The court's instructions to the jury.

#### i.

First, the Brady rule requires that the prosecution disclose exculpatory evidence and

7

information which could be used to impeach Government witnesses if the information is material. When disclosure is tardily made, this Circuit has held that "[n]o due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial." See United States v. Smith Grading and Paving, Inc., 760 F.2d 527, 532 (4th Cir. 1985). Here, the defendant complains of the late disclosure of certain Social Security Administration ("SSA") documents. No prejudice occurred with this tardy disclosure because the court allowed the defendant additional time to study this evidence for use at trial. The court was notified by the defendant of the late Brady material on April 22, 2006. The court continued the trial from April 24, 2006 to April 26, 2006 to allow the defendant's counsel to prepare the two pages of additional Brady material for use at trial. The evidence was used by the defendant in formulating his defense and was utilized at trial and, thus, no prejudice occurred. Even if the late disclosure was in error, the error was harmless because of the overwhelming evidence of his guilt on the social security charges.

ii.

Second, the court's refusal to continue the trial to allow the defendant more time to investigate the possibility of more Brady material from the SSA was not in error. The court held a hearing in which the defendant was allowed to argue his reasons for a continuance. The defendant was unable to point to the existence of any further Brady material other than his own conjecture. A representative of the SSA testified that no further documents existed and those that did, had already been produced. It is not prejudicial to the defendant to deny him the opportunity to pursue items that do not exist in an effort to delay trial. Even if the denial of a continuance was in error, the error was harmless because of the overwhelming evidence of his guilt on the

8

social security charges.

### iii.

Third, it was not in error for the court to refuse to strike a potential juror for cause during *voir dire*. The defendant argues that the potential juror should have been struck for cause because she opined that the defendant would not have been charged if the government did not have some evidence of guilt. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." United States v. Jones, 608 F.2d 1004, 1007 (4th Cir. 1979) (citing Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961)). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Id. "The burden of proving partiality is upon the challenger." Id. "Moreover, findings of impartiality should be set aside only where prejudice is 'manifest.'" Id.

Although the potential juror did state that she thought there was some evidence of guilt because of the indictment, it was not prejudicial because she answered in the affirmative when the court asked her whether she could set aside her preconceived notions and decide the case solely on the evidence. The court also instructed the potential juror that the government had the burden of proving its case beyond a reasonable doubt against the defendant; she stated that she understood. Any preconceived notion of guilt that this potential juror had was rectified by the court's questioning of her. The defendant has offered no further proof of any impartiality that the this potential juror had, and thus, it was not in error to refuse to strike her for cause. In addition, any prejudice to the defendant was corrected when the court allowed the defendant to have more

peremptory strikes than the minimum required.

### iv.

Fourth, the admission of the Fed. R. Evid. 404(b) evidence at issue was not in error. The evidence was used to prove motive, opportunity, intent, plan, knowledge and/or absence of mistake or accident. See Fed. R. Evid. 404(b). The only reason that such evidence could be excluded is if its prejudicial effect substantially outweighed its probative value; the court found it did not. See Fed. R. Evid. 403. Furthermore, the defendant's argument of a "time bar" as to the evidence is peculiar. The defendant is not being prosecuted for those acts; thus, there is no statute of limitations issue. The only plausible argument would be that the evidence is "stale" and thus its prejudicial effect outweighs its probative value under Rule 403. The court finds that the evidence's probative value is not outweighed because of its age.

### v.

As for the arguments based on alleged errors in the jury instructions, the defendant must prove not only that the instructions were flawed but the error(s) seriously prejudiced the challenging party's case. Cf. South Atlantic Ltd. P'Ship of Tenn., L.P. v. Riese, 284 F.3d 518, 530 (4th Cir. 2002). "Instructions are adequate if 'construed as a whole, in light of the record, [they] adequately [inform] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party.'" Id.

The defendant alleges that the court erred when it used the term "intent," rather than "specific intent," to instruct the jury on the mail fraud counts. It is without a doubt that "specific intent" is the state of mind required to prove mail fraud, however, "it is not necessary or desirable that this terminology be employed in the jury instruction." Cf. United States v. Perez, 43 F.3d

10

1131, 1138 n.11 (7th Cir. 1994) (citing United States v. Abrambasich, 597 F.2d 609, 612 (7th Cir.1979), for the proposition that there is no "particular magic or salvation in using the word 'specific' per se."). As the Perez court stated, the labels "specific intent" and "general intent" are not enlightening to juries and "[m]ore specific and therefore more comprehensible information is conveyed by stating the precise mental state required for the particular crime." See Abrambasich, 43 F.3d at 1138 n.11 (citation omitted).

The court instructed the jury that the state of mind required to find the defendant guilty on the social security counts is that he had an "intent to defraud" and "such acts were done willfully and knowingly." The court instructed the jury that the requisite state of mind for the mail fraud counts is an "intent to defraud." The court explained that "intent to defraud" was "an intent to deceive or cheat someone." Although the court did not use the term "specific intent" in the mail fraud counts, the instructions as a whole adequately instructed the jury, without confusing them, as to the requisite state of mind needed to find the defendant guilty.

Although the court's instruction as to "willfulness" did omit the fact that such conduct usually connotes a "bad" or "unlawful" purpose, the instructions as a whole adequately conveyed to the jury the proper state of mind needed to convict the defendant. In Counts I and II, the court instructed the jury that they needed to find the defendant had an "intent to defraud." The court did not define "defraud" for these counts but the dictionary definition of "defraud" is "to take or withhold . . . by calculated misstatement or perversion of truth, trickery or other deception." See Webster's Third New International Dictionary 593 (1986). The use of the word defraud explicitly suggests an element of unethical or bad motive. Thus, by instructing the jury that they needed to find the defendant had some sort of fraudulent intent, the court gave sufficient

11

instruction as to the requisite culpable state of mind required. Furthermore, for Count VI, the court instructed the jury that they needed to find that the defendant made a false or fraudulent statement or representation. This instruction properly informed the jury of the requisite culpable state of mind required for this count. Cf. United States v. Hunt, 794 F.2d 1095, 1100 (5th Cir. 1986) ("[Defendant] argues nevertheless that a fair trial can occur only if the judge utters the magic words 'with bad purpose.' For us to require certain ways of defining terms . . . without our reviewing the entire charge, without our inquiring into all circumstances of the trial, would promote shallow form over substance. We emphatically refuse to straightjacket the district courts' discretion in instructing juries because a criminal defendant raises some abstract semantical debate.").

Last, the defendant argues that the instructions as to Count VII were in error. The defendant argues that the court diluted the *mens rea* instruction. This argument is based on the fact that the court did not specifically say the words "specific intent" to the jury when defining the *mens rea* element, "corruptly." Again, the words "specific intent" convey no unique aura of protection against error, without which, it must always be assumed that prejudice has occurred to the defendant. The instructions as a whole must be reviewed. "Corruptly" was defined as acting "voluntarily and deliberately and for the purpose of improperly influencing or obstructing or interfering with an official proceeding." The jury was instructed that they must find that the defendant acted with the required *mens rea*, "corruptly," with the *actus reus* of "influencing," "obstructing," or "impeding" an official proceeding. Such instruction was sufficient.

In addition, the court agrees with the defendant that there must be a nexus between the defendant's intent and an official proceeding. He is incorrect, however, in arguing that the jury

12

should have been instructed that the government prove the defendant intended to affect the grand jury proceeding. As mentioned previously, "official proceeding" as used in Section 1512(c)(2) encompasses more than just judicial proceedings such as grand juries. The jury was instructed that the defendant must have intended to influence, obstruct, or impede an official proceeding, which sufficiently fulfilled the nexus requirement.[2]

### III. Conclusion

The defendant's motion for judgment of acquittal has no basis because he could be convicted on Count VII for lying to the FBI agent and there was sufficient evidence of guilt on all counts. In addition, the defendant's motion for a new trial has no basis because he was granted a fair trial in which no serious prejudice was present.

ENTER: This 5th day of July, 2006.

*James C. Turk*
James C. Turk
Senior United States District Judge

---

[2] Although the court instructed the jury on a definition of "official proceeding" which was too narrow, such instruction was not seriously prejudicial to the defendant because he could have been, and was, found guilty of corruptly influencing, obstructing, or impeding an official proceeding by lying to the FBI agent and subsequently leading him on a search for nonexistent documents. See South Atlantic, 284 F.3d at 530 ("Even if we conclude that the challenged instructions are erroneous, we will not reverse unless the error seriously prejudiced the challenging party's case.").

13